UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KYLENE ROSARIO,

                            *Plaintiff,*

            – against –

PRASAD COSMETIC SURGERY, and
AMIYA PRASAD, M.D.,

                            *Defendants.*

**MEMORANDUM & ORDER**
21-cv-02944 (NCM) (AYS)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Kylene Rosario brings this action against Prasad Cosmetic Surgery ("Prasad Cosmetic") and Amiya Prasad for wage related claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a)(1), and New York Labor Law ("NYLL"), NYLL Article 19 § 650 et seq. Defendants also raise a counterclaim against plaintiff for breach of fiduciary duty. The parties bring cross-motions for summary judgment, on which the Court heard oral argument.[1] For the reasons stated below, plaintiff's motion is **DENIED** and defendants' motion is **GRANTED in part**, **DENIED in part**.

---

[1]     Hereinafter, the Court refers to Plaintiff's Memorandum in Support of Summary Judgment, ECF No. 67, as "Pl. Mot."; Defendants' Opposition, ECF No. 68, as "Defs. Opp'n"; Plaintiff's Reply in Support, ECF No. 69, as "Pl. Reply"; Defendants' Memorandum in Support of Summary Judgment, ECF No. 71, as "Defs. Mot."; Plaintiff's Opposition, ECF No. 72, as "Pl. Opp'n"; Defendants' Reply in Support, ECF No. 73, as "Defs. Reply"; Plaintiff's 56.1 Statement, ECF No. 67-1, as "Pl. 56.1"; Defendants' 56.1 Counter-statement, ECF No. 68-1, as "Defs. Counter 56.1."; Defendants' 56.1 Statement, ECF No. 71-1, as "Defs. 56.1"; and Plaintiff's 56.1 Counter-statement, ECF No. 72-1, as "Pl. Counter 56.1."

## BACKGROUND[2]

Plaintiff began working for defendants in 2009, engaging in a range of administrative duties for Prasad Cosmetic until her termination in April 2021. *See* Pl. Counter 56.1 ¶¶ 7, 23, 27. Prasad Cosmetic offers cosmetic surgery and treatments from its offices in Garden City, Manhattan, and Vienna, Virginia. Defs. 56.1. ¶ 1. Amiya Prasad is a board certified cosmetic surgeon and the President and Medical Director of Prasad Cosmetic. Defs. 56.1 ¶¶ 4, 5.

While the parties dispute plaintiff's title and whether she was the employee principally responsible for her duties, they agree that her duties included office management, accounts payable, and employee issues including staffing schedules and vacation requests.  Pl. Counter 56.1 ¶¶ 7, 23.  During her employment, plaintiff's duties also included purchasing certain office supplies with company credit cards from various retailers, such as Staples, Best Buy, and Walmart. Pl. Counter 56.1 ¶¶ 23, 33. From 2009 to October 2016, plaintiff was employed at another company, Presidio Networked Solutions, Inc. ("Presidio"), in addition to Prasad Cosmetic. *See* Pl. Counter 56.1 ¶¶ 11, 12, 15, 16.

---

[2]    All facts are undisputed unless otherwise indicated. The Court rejects plaintiff's contention that the Court must preclude any facts supported by the Declaration of Sudha Prasad. *See* Pl. Opp'n 7. Although plaintiff asserts that there "was a deliberate attempt to circumvent the discovery process" by not allowing plaintiff to depose Sudha Prasad, this argument is unavailing. *See* Pl. Opp'n 7. To support this argument, plaintiff submitted a January 2023 email from counsel requesting dates for Sudha Prasad's deposition. Pl. Opp'n, Ex. I. However, plaintiff did not provide defense counsel's response, if any, to this email, nor allege that counsel made any subsequent requests to schedule the deposition. *See* Pl. Opp'n, Ex. I. Further, in reviewing the docket, the Court observes no attempts to compel Prasad's deposition after the January 2023 email. Rather, discovery in this action closed uneventfully on November 20, 2023. *See* ECF Order dated Oct. 19, 2023. Thus, the record indicates a lack of pursuit by plaintiff rather than deliberate interference by defendants.

During the period for which plaintiff claims unpaid overtime, 2015 to 2021, plaintiff received payment at her hourly rate for all hours worked at Prasad Cosmetic. Pl. Counter 56.1 ¶¶ 29, 30. During this period, plaintiff was paid in cash. Pl. 56.1 ¶¶ 37, 67. Plaintiff was terminated from Prasad Cosmetic in April 2021. Pl. Counter 56.1 ¶ 27. Defendants claim plaintiff was terminated for "stealing from the company," while plaintiff disputes the allegations of theft and asserts that defendants did not provide a justification for her termination. Pl. Counter 56.1 ¶ 27.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021).[3] Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the moving party meets their burden, the non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). The court need only consider admissible evidence, and is not obligated to conduct an independent review of

---

[3]    Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

the record to identify a factual dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

When both parties submit a motion for summary judgment, "the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023). A district court's role is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). Furthermore, "a district court may not make credibility determinations, or weigh evidence" on summary judgment. *Reynolds v. Quiros*, 990 F.3d 286, 294 (2d Cir. 2021). Thus, a district court denies summary judgment where there are disputed facts "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

## DISCUSSION

### I.    Wage Notice and Statement Claims

Defendants argue that plaintiff's fourth and fifth causes of action for wage notice and statement violations pursuant to NYLL Sections 195(1) and 195(3) (together, "NYLL 195") should be dismissed for lack of standing. Defs. Mot. 21–22. As plaintiff has failed to show that defendants' alleged wage notice and statement violations have caused her concrete harm, these claims are dismissed.

NYLL 195 requires that employers provide (i) a wage notice upon the hiring of an employee and (ii) regular wage statements throughout an individual's employment. *See* N.Y. Labor. Law § 195(1), (3). When raised in federal court, claims for violation of these

statutory provisions are subject to Article III standing requirements. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). To establish standing, a plaintiff must demonstrate that (1) she has "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "the injury was likely caused by the defendant[s];" and (3) judicial relief would likely redress plaintiff's injury. *Id.* at 423.

In *Guthrie v. Rainbow Fencing Inc.*, the Second Circuit clarified the necessary showing for NYLL 195 claims to satisfy the Article III standing requirement of a concrete injury in fact. 113 F.4th 300 (2d Cir. 2024). The *Guthrie* court held that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" to demonstrate concrete injury. *Id.* at 308. Further, plaintiffs cannot "assume" standing "or rely on speculation and conjecture" in order to make this showing. *Id.* at 309. Allegations of "potential harms that *could* result" are insufficient. *Id.* at 310 (emphasis in original).

There are a range of "possible injuries" that can result from violations of NYLL 195. *Guthrie*, 113 F.4th at 311. These injuries include the inability to apply for public benefits, bank loans, and credit cards due to lack of documentation, to seek redress based on a determination that "they are being robbed by the employer," or to ensure that the correct tax, insurance, and other deductions are made on an employee's behalf. *Id.* at 310. A plaintiff can demonstrate injury by showing they "would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Id.* at 308. Further, courts have found sufficient injury to demonstrate standing for NYLL 195 claims where plaintiffs "aver[red] that Defendants' alleged failure to provide wage notices and wage statements caused [them] to endure uncertainty regarding [their] wages and prevented [them] from taking action to correct Defendants' wage and hour violations."

*Rosas v. M and M LA Solucion Flat Fixed Inc.*, No. 23-cv-01212, 2024 WL 4131905, at *12 (E.D.N.Y. Sept. 10, 2024), *report and recommendation adopted*, ECF Order (Sept. 30, 2024). Injury has also been found where a plaintiff alleged that defendants "were able to hide their violations of wage and hour laws and take advantage of Plaintiff's relative lack of sophistication by failing to provide her with wage information." *Castillo v. Hollis Delicatessen Corp.*, No. 22-cv-05476, 2024 WL 4107258, at *1 n.1 (E.D.N.Y. Sept. 6, 2024) (adopting report and recommendation). *See also Lock v. Costco Wholesale Corp.*, No. 2:23-cv-07904, 2024 WL 4728594, at *6 (E.D.N.Y. Nov. 8, 2024) (finding plaintiffs lacked standing where plaintiffs' declarations demonstrated that they knew their weekly hours exceeded forty per week); *Blanco v. M&R Plaza Deli Inc.*, No. 23-cv-09408, 2024 WL 4859467, at *6 (E.D.N.Y. Oct. 29, 2024), *report and recommendation adopted*, 2024 WL 4855214 (E.D.N.Y. Nov. 21, 2024) (finding lack of standing where plaintiff did not show that they would have "undertaken self-advocacy and plausibly would have avoided some actual harm" had accurate notices or statements been provided). Moreover, courts have recognized *Guthrie*'s effect at summary judgment, noting that "potential plaintiffs would likely need to submit sufficient affidavits or provide credible testimony that the failure to provide wage statements and wage notices caused downstream harm because the lack of such statements led to lost wages." *Charles v. Pinnacle Too, LLC*, No. 22-cv-04232, 2024 WL 4491560, at *15 (S.D.N.Y. Oct. 15, 2024).

Here, the parties disagree as to the application of *Guthrie*. Defendants assert that *Guthrie* requires "plaintiff [] to show that the failure to provide the notice and statement actually caused the overtime harm," which they allege plaintiff has failed to do. Oral Arg. Tr. 7:12–16 (draft on file with court). In contrast, plaintiff argues that *Guthrie* applies to cases where plaintiffs raise statutory notice violations as the "sole damages" without also

raising wage claims or otherwise identifying injuries flowing from any statutory violation, which is not the case here. *See* Oral Arg. Tr. 6:9–21. Plaintiff argues that, in *Guthrie*, the claim for unpaid wages was decided prior to dismissal of the wage notice claims, and then "because the wage claims were resolved and the only thing was the notice" claims, the court "declined jurisdiction" over the notice claims. Oral Arg. Tr. 9:2–9. Plaintiff argues that, in contrast to *Guthrie*, plaintiff's claims for wage and notice violations and unpaid overtime are "not two separate claims" because "[i]t all results from the same bad act; therefore, there is harm and all these claims are as one." Oral Arg. Tr. 5:11–13. Thus, the parties differ on whether alleging overtime harm in addition to statutory wage and notice violations is sufficient to support injury in fact, because they arise out of the same alleged conduct. Defendants are correct—alleging overtime harm alone, without connecting it to the wage statement and notice violations, is inadequate to establish the actual harm necessary for Article III standing.

Contrary to plaintiff's argument, the plaintiff in *Guthrie* moved the court for a default judgment on all claims, and sought unpaid wages as well as statutory damages arising from the employer's failure to provide wage notices and statements. *See Guthrie v. Rainbow Fencing Inc.*, No. 21-cv-05929, 2023 WL 2206568, at *1 (E.D.N.Y. Feb. 24, 2023), *aff'd*, 113 F.4th 300 (2d Cir. 2024). In adopting the magistrate judge's report and recommendation on plaintiff's motion for default judgment, the district court affirmed as to plaintiff's claims for unpaid minimum and overtime wages, and in the same order, dismissed plaintiff's NYLL wage notice and wage statement claims because plaintiff failed to allege standing for those claims. *Id.* In so finding, the district court explained that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439

7

(2017)); *see also Guthrie v. Rainbow Fencing Inc.,* 113 F.4th 300, 304 (2d Cir. 2024). The same is true here: as in *Guthrie*, plaintiff brings separate claims for wage statement violations, wage notice violations, and unpaid overtime, and it is plaintiff's burden to establish standing for each of these claims.

While a "plaintiff need not . . . establish an injury that is greater than or different from the loss of wages or overtime pay alleged in their lawsuit," the plaintiff must show "some causal connection between the" wage notice and statement violations "and the alleged downstream harm." *Ramos v. Allied Concrete Indus. Inc.*, No. 2:23-cv-03366, 2024 WL 5168766, at *1 (E.D.N.Y. Dec. 19, 2024); *see e.g.*, *Roma v. David Carmili, Physician, P.C.*, --- F. Supp. 3d ----, No. 23-cv-04072, 2024 WL 5152211, at *5 (E.D.N.Y. Dec. 18, 2024) (finding plaintiff demonstrated standing by, among other things, alleging that defendants' failure to provide wage statements prevented her from "correcting issues with deductions and discrepancies" in her pay).

Here, plaintiff provides no affidavits or testimony to support a causal connection between the lack of wage notice or statements and her injury. Nor does the record support a finding that plaintiff has demonstrated downstream harm connected to the notice and statement violations. Plaintiff asserts that she kept records of her hours, which indicates an awareness of her pay and the hours she worked per week. Pl. 56.1 ¶ 31. Additionally, plaintiff was knowledgeable about wage payments—employee payroll was one of her administrative duties at Prasad—and therefore was aware that she should have been paid overtime when she worked over 40 hours in a given week. *See* Pl. Counter 56.1 ¶ 23 (disputing only that plaintiff was the employee "principally responsible" for employee payroll, and disputing defendants' reliance on Sudha Prasad's affidavit); Pl. Dep. Tr. 138:16–23, ECF No. 71-8 (testifying that as of 2015 plaintiff was a Human Resources

professional who knew how overtime compensation worked). Plaintiff determined her monthly pay and was authorized to pay some portion of that amount from the company safe, additionally, plaintiff knew defendants were paying her "off the books." *See* Defs. Counter 56.1 ¶¶ 35, 36. Plaintiff also testified that she spoke about receiving overtime with Sudha or Amiya Prasad on "maybe five" occasions during her employment at Prasad Cosmetic. Pl. Dep. Tr. 142:8–17, ECF No. 71-8. In fact, plaintiff testified that defendants' failure to pay her overtime "was a sticking point" that came up "a couple of times." Pl. Dep. Tr. 140:15–21, ECF No. 71-8.

Assuming *arguendo* that plaintiff did work over 40 hours per week in the relevant period, plaintiff knew both that she worked over 40 hours per week and that she should have been paid overtime. These undisputed facts indicate a level of knowledge distinguishable from plaintiffs in other cases where an employer was able to "hide" violations and therefore cause informational harm. *See Castillo*, 2024 WL 4107258, at *1 n.1. Accordingly, plaintiff has failed to show that it was the lack of wage statements or notice that led to her underpayment—instead, plaintiff testified that defendants simply refused to pay her overtime. Pl. Dep. Tr. 205:17–18, ECF No. 71-8 ("I was told that I was not allowed to do overtime."). Even viewing the record in the light most favorable to plaintiff, plaintiff has failed to demonstrate that defendants' failure to provide wage statements or notice caused her to be unaware of whether she was working over 40 hours a week without overtime compensation. Therefore, finding no evidence of a concrete injury nor facts to support a causal connection between the statutory violations of NYLL 195 and the alleged injury of unpaid overtime, summary judgment is granted to defendants as to these claims.

## II.      Overtime Compensation & Breach of Fiduciary Duty

The parties seek summary judgment on plaintiff's overtime compensation claims and defendants' breach of fiduciary duty counterclaim. A motion for summary judgment should be denied "[w]here there are genuine issues of material fact that may reasonably be resolved in favor of either party." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 228 (2d Cir. 2024). "Mere conclusory allegations or denials" and "speculation or conjecture" are insufficient to overcome a motion for summary judgment. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). Summary judgment is appropriate "only when . . . there can be but one reasonable conclusion as to the verdict." *Moll*, 94 F.4th at 228.  That certainty is absent here.

The Court highlights two areas of material factual issues that render summary judgment inappropriate. The first is whether plaintiff worked in excess of 40 hours per week. The second is whether and to what extent plaintiff engaged in misconduct regarding a vendor promotion, misuse of defendants' company credit cards, and a romantic affair with a co-worker.

### A.  The Survelliance Videos

Before considering the parties' arguments regarding summary judgment, the Court first resolves plaintiff's objection to the Court's consideration of the surveillance footage produced by defendants. That footage purports to show plaintiff's comings and goings from defendants' office, as well as her alleged misconduct while at the office.

Plaintiff argues that the surveillance footage is not properly before the Court because the videos "need to be established as business records kept as part of standard business practice" pursuant to Rule 803(6) of the Federal Rules of Evidence. Pl. Opp'n 9–10. In addition, plaintiff argues that defendants "deliberately viewed and saved [video]

footage that suited their nefarious purposes," failing to save other footage that might have supported plaintiff's claims. Pl. Opp'n 11–12. Furthermore, plaintiff asserts that there are significant reliability issues with the videos, including uncertainty as to how the footage was acquired, saved, and produced. *See* Pl. Opp'n 10–12. At oral argument, plaintiff further highlighted that defendants did not proffer evidence of time-keeping software, which defendants did not use to track plaintiff's hours. Oral Arg. Tr. 28:17–21.

In response, defendants correctly note that Federal Rule of Evidence 803 governs exceptions to the rule against hearsay evidence. *See* Defs. Reply 10; Fed. R. Evid. 803. The Rules define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Where a video contains no verbal conduct which could be construed as a statement, as is the case here, that video does not constitute hearsay and may be considered by a district court in resolving a motion for summary judgment. *Thomas v. Town of Hempstead*, No. 17-cv-02813, 2021 WL 2291838, at *5 (E.D.N.Y. June 4, 2021).

While a party need not ordinarily authenticate evidence for purposes of summary judgment, evidence can nonetheless be authenticated "merely upon a showing that 'a reasonable juror could find in favor of authenticity or identification.'" *Agoliati v. Block 856 Lot 300 LLC*, No. 19-cv-05477, 2023 WL 8618234, at *3 (E.D.N.Y. Dec. 13, 2023) (quoting *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001)). The Court finds that the declaration submitted by defendants' security system operator detailing the location of the cameras, time of the footage, and method for preparing the video files establishes a reasonable probability of the videos' authenticity. *See* Yfraimov Decl., ECF No. 71-4. Further, plaintiff's remaining objections to the video, including skewed selection of video

footage, are areas proper for cross examination at trial. *See Frost v. New York City Police Dep't*, 980 F.3d 231, 247–48 (2d Cir. 2020), *cert. denied*, 142 S. Ct. 1666 (2022).

Accordingly, the Court considers the videos in resolving the instant motions.

### B.   Overtime Hours

The primary material factual dispute before the Court is whether plaintiff worked more than 40 hours per week such that defendants are liable for non-payment of overtime wages. There are two relevant time periods at issue. Both parties seek summary judgment as to the first: May 2015 to October 2016 ("Period One"). *See* Pl. Counter 56.1 ¶ 16; Pl. Mot. 11; Defs. Mot. 19. Plaintiff alone seeks summary judgment as to the second: October 2016 to February 2021 ("Period Two"). *See* Pl. Mot. 11.[4]

When pay records are either lacking or insufficient, courts apply a burden-shifting framework to resolve factual hours disputes. *See Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)). Under this framework, a plaintiff need only produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Perry v. City of New York*, 78 F.4th 502, 526 (2d Cir. 2023). This burden "is not high," and may be met "through estimates based on [plaintiff's] own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). Even testimony that is imprecise or "somewhat inconsistent" can suffice to shift the burden to the employer defendant. *Id.* at

---

[4]   Plaintiff argues that she is entitled to overtime compensation for every week from "2015 through the date of her termination." Pl. Mot. 11. The record indicates that plaintiff was terminated in April 2021. Pl. Counter 56.1 ¶ 27 (not disputing the date of plaintiff's termination); Pl. Dep. Tr. 243:5–6, ECF No. 71-8 (". . . before I was terminated in April 2021"). However, plaintiff's complaint alleges that her employment ended in February 2021. Compl. 5, ECF No. 1. As both parties' motions for summary judgment are denied as to plaintiff's overtime claims, the Court does not resolve the discrepancy at this time.

364–65. This is because "the dispute as to the precise amount of [plaintiff's] uncompensated work is one of fact for trial." *Id.* at 365. Where an employee has met that burden, "the employer may rebut with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012).

The parties agree that defendants' records for plaintiff are lacking, and that the *Anderson* framework applies. Pl. Mot. 14–15; Defs. Mot. 19. For the reasons stated below, the Court finds that a genuine issue of a material fact remains as to whether plaintiff incurred unpaid overtime hours during Periods One and Two.

### i.   Period One: May 2015 to October 2016

Both parties seek summary judgment on plaintiff's overtime claims for Period One. *See* Pl. Counter 56.1 ¶ 16; Pl. Mot. 11; Defs. Mot. 19. When evaluating cross-motions for summary judgment, the "basic standard" is not altered, and the court is tasked with determining "whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021). Each party's motion "must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

To support her claim for unpaid overtime for Period One, plaintiff estimates that she "worked on [sic] average of five hours of overtime" each week. Oral Arg. Tr. 21:23–22:2; *see also* Pl. Dep. Tr. 165:17–19, ECF No. 71-8. Defendants similarly point to plaintiff's testimony, arguing that plaintiff's statements are "vague" for 2015 and that plaintiff is "unable to identify specific work weeks" in 2016 during which she worked overtime. Oral Arg. Tr. 32:3–6. Defendants further note that plaintiff had additional

13

employment during that period and therefore worked only part-time for Prasad Cosmetic, and, indeed, denied working overtime during certain pay periods in mid and late 2015. Oral Arg. Tr. 12:4–16; Defs. Mot. 20; Pl. Counter 56.1 ¶ 17.

In order to prevail on her overtime wage claims for Period One, plaintiff must provide at least a reasonable estimate of her hours worked. While plaintiff's burden is not high, there remains a dispute as to whether her estimate of hours worked during this period is reasonable. Plaintiff correctly notes that she may rely on her recollection and estimates of hours to satsify her burden of providing a reasonable estimate. *See* Pl. Mot. 12–13. For example, in *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372 (E.D.N.Y. 2012), one class of plaintiffs testified specifically that they worked from 4:00AM to 11:00AM seven days a week plus afternoons every other day, resulting in workweeks of over forty hours. *Id.* at 382–83. The court found that these plaintiffs were entitled to summary judgment on their overtime claims where testimony of supervisors corroborated their testimony and timesheets maintained by defendants showed that some employees kept that same schedule. *Id.* In the same case, another group of plaintiffs also testified to a specific schedule of over 40 hours a week, which the court found met the initial burden under *Anderson. Id.* at 383. However, the court found that the supervisors' testimony, which outlined a schedule with a maximum of 38 hours, was sufficient to disentitle each party to summary judgment at the second step of the *Anderson* framework. *Id.* at 384.

Here, plaintiff testified that she believes there were a few weeks in 2015 where she worked more than 40 hours. Pl. Dep. Tr. 137:6–19, ECF No. 71-8. For 2016, plaintiff also testified that she stopped working at Presidio, her other place of employment, and was only working at Prasad. She recalled that she "was working 60, 70 hours a week" at that

time but she could not recall "the exact timeline when [she] started working more hours." Pl. Dep. at 178:17–25, ECF No. 71-8. The evidence presented by plaintiff for Period One is thin. Unlike in *Berrios*, she fails to identify a general work schedule for the weeks she worked more than 40 hours. However, the Supreme Court, in laying out the *Anderson* framework, specifically stated that the requirement for plaintiffs to provide an estimate of their overtime hours should not be "an impossible hurdle for the employee," considering that the FLSA requires employers to retain records of employees' hours worked. *Anderson*, 328 U.S. at 687.

Because plaintiff need only show that there "is a reasonable basis for calculating damages" assuming that a violation is shown, she has satisifed her burden under *Anderson. Kuebel*, 643 F.3d at 364–65 (finding plaintiff's testimony that "to the best of his memory" he averaged one to five hours of uncompensated overtime each week sufficient). Plaintiff's deposition testimony has established the "approximate hours worked" and thus has shifted the burden to defendants to come forward with evidence that negates the reasonableness of the inference created by her testimony as to whether, and to what extent, she worked overtime hours. *See Ladino v. Cordova*, No. 21-cv-02449, 2023 WL 2915402, at *4 (E.D.N.Y. Apr. 12, 2023).

Defendants have presented evidence to negate the reasonableness of the inference to be drawn from plaintiff's testimony. In particular, defendant Amiya Prasad, who supervised plaintiff during the relevant period, submitted a declaration stating that plaintiff worked a schedule of Monday and Wednesday evenings and Saturdays, with some limited hours worked from home, which resulted in plaintiff working a maximum

of 35 hours per week. A. Prasad Decl. ¶ 78, ECF No. 68-3.[5] Defendants do not, however, present any documentary evidence in rebuttal. In the absence of documentary evidence regarding plaintiff's hours worked, the resolution of this dispute would require the Court to engage in a credibility analysis to resolve conflicting testimony, an exercise that is inappropriate at the summary judgment stage. *See Canela-Rodriguez v. Milbank Real Est.*, No. 09-cv-06588, 2010 WL 3701309, at *2 (S.D.N.Y. Sept. 20, 2010) (finding plaintiff's testimony that he worked over 40 hours a week "create[d] a fact issue precluding summary judgment, notwithstanding defendants' challenge to the credibility of this testimony" which must be resolved at trial). Whether viewed in the light most favorable to plaintiff or defendants, this record could support a jury finding for either party depending on how the competing testimony is weighed.

Without any evidence other than contradictory testimony as to the unspecified hours worked by plaintiff, the Court is left with a credibility determination best left for the jury. Accordingly, summary judgment is denied for both parties as to Period One.

---

[5]     Plaintiff argues that the Court should disregard Amiya Prasad's declaration as a "sham affidavit." Pl. Reply 8. In the Second Circuit, it is "well-settled that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 378 (E.D.N.Y. 2012). Plaintiff's only basis for invoking this doctrine against Amiya Prasad's affidavit is that when shown the credit card bills at his deposition, Dr. Prasad could not identify what was purchased or by whom, but that he could "fully identify" those purchases in his declaration, and that his declaration had "new explanations" for paying plaintiff "off the books." Pl. Reply 8–9. These are not the types of direct conflicts between deposition testimony and affidavits that result in district courts disregarding affidavits wholesale. *See CDS Bus. Servs. Inc. v. Sebbag*, No. 21-cv-01992, 2023 WL 7181646, at *3 (E.D.N.Y. Aug. 16, 2023). Even if the Court found there were direct conflicts, the Court may simply consider Amiya Prasad's declaration to the extent it does not contradict his prior deposition testimony as to Period One. *See Pollard v. New York Methodist Hosp.*, 134 F. Supp. 3d 681, 684 n.2 (E.D.N.Y. 2015).

ii.   Period Two: October 2016 to February 2021

Only plaintiff moves for summary judgment on Period Two. Accordingly, the Court draws all reasonable inferences in defendants' favor when reviewing the record. *See Roberts*, 68 F.4th at 88.

Plaintiff supports her overtime wage claim for Period Two by asserting that she worked an average of 60–70 hours a week during that period. Pl. 56.1 ¶ 29. Plaintiff contends that such testimony is sufficient to shift the evidentiary burden to defendants despite no specificity as to any time not worked, for example, for purposes of vacation or illness. Oral Arg. Tr. 20:8–14, 21:9–16. Defendants present evidence to negate the reasonableness of the inference that plaintiff worked 60–70 hours per week through, *inter alia*, Amiya Prasad's declaration. *See* Defs. Opp'n 14. Specifically, Amiya Prasad avers that plaintiff's schedule from late 2016 to 2019 consisted of in-office work on Mondays, Wednesdays, and Fridays. A. Prasad Dec. ¶¶ 86–88. Additionally, defendants summarize years of surveillance footage, *see* Defs. Opp'n Ex. F (spreadsheet summarizing plaintiff's time in the office from February 2018 to February 2021), and assert that plaintiff was "only in the office for 25 hours" for "many weeks" during Period Two, Oral Arg. Tr. 17:24–25; A. Prasad Decl. ¶ 115. Defendants assert that beginning in January 2020, plaintiff began coming into the office Monday through Friday, and that for the majority of the weeks in 2020 plaintiff was in the office less than 40 hours a week. A. Prasad Decl. ¶¶ 129, 130. Defendants posit that on those occasions in 2020 when plaintiff was in the office more than 40 hours, she was not working, but spending time engaging in "sexual or other recreational activity" with her subordinate. A. Prasad Decl. ¶¶ 131–33.

The parties also dispute the hours plaintiff worked remotely during Period Two. Defendants argue that, because the video footage shows plaintiff physically in the office

an average of 25 hours a week from 2016 to the end of 2019, she would have had to work the vast majority of her hours remotely during this period to meet her estimate of 60–70 hours of work per week. Defs. Opp'n 14. Defendants' argument implies that this estimate is implausible, that plaintiff "at best" worked one or two hours per week remotely, and that "the only evidence" to support that plaintiff worked a significant amount of time remotely is her own testimony because "her husband who she resided with had no knowledge whatsoever of the quantum of hours" plaintiff worked remotely. Defs. Opp'n 14–15. *See also* Oral Arg. Tr. 17:19, 18:3–8. Plaintiff does not offer evidence, such as emails, work assignments, or VPN logins, that might support an inference that she worked the bulk of her hours remotely from 2016 to late 2019. For the entirety of Period Two, plaintiff does not assert how frequently she worked remotely, and instead noted that she "was always available" and "was working from home multiple days a week before work." Pl. Dep. Tr. 228:10, 21–22, ECF No. 71-8.

Resolving all reasonable inferences in defendants' favor, the Court first accepts defendants' characterization of the video footage showing that plaintiff was physically in the office on average 25 hours per week from 2016 to 2019, and that for 2020 and 2021, plaintiff's time spent actually working in the office was less than 40 hours per week. Next, the Court finds that plaintiff has failed to offer evidence in support of an inference that she worked sufficient hours remotely in Period Two that would entitle her to overtime wages as a matter of law. Even assuming that plaintiff has met her burden to offer a reasonable estimate of her time worked, defendants have come forward with evidence to negate the reasonableness of that estimate.

Accordingly, plaintiff is not entitled to summary judgment on her overtime claim for Period Two.

18

### C. Faithless Servant and Alleged Misconduct

Both parties seek summary judgment on defendants' counterclaim for breach of fiduciary duty. Pursuant to New York's faithless servant doctrine, employees are prohibited "from acting in any manner inconsistent with their agency or trust and are at all times bound to exercise the utmost good faith and loyalty in the performance of their duties." *Roytlender v. D. Malek Realty*, LLC, No. 21-cv-00052, 2024 WL 3566998, at *11 (E.D.N.Y. July 29, 2024). Where an employee acts contrary to this duty, they may forfeit the right to compensation "for services that are tainted by the dishonesty." *Id.*

New York courts have used two different standards to determine when an employee's misconduct warrants forfeiture. The "distinction between the two" standards lies in whether the breach is "substantial." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 237 (2d Cir. 2020). The first standard, referred to as the *Turner* standard, is met when the employee's "misconduct and unfaithfulness" is so significant that the employee's conduct "substantially violates the contract of service." *Turner v. Konwenhoven*, 100 N.Y. 115, 120 (1885). The second, referred to as the *Murray* standard, is met when "misconduct by an employee . . . rises to the level of a breach of a duty of loyalty or good faith." *Yukos Cap. S.A.R.L.*, 977 F.3d at 237. In applying the faithless servant doctrine, New York courts ask whether "(1) . . . the employee's disloyal activity was related to the performance of her duties, and (2) . . . the disloyalty permeated the employee's service in its most material and substantial part." *Roytlender*, 2024 WL 3566998, at *12.

Regardless of which standard applies here, facts pertaining to plaintiff's alleged misconduct remain in dispute, the resolution of which are not appropriate for summary judgment. While the Court finds that defendants have offered evidence tending to show that plaintiff engaged in some misconduct associated with the performance of her duties

19

at Prasad, the extent of that misconduct and whether it implicated a substantial part of plaintiff's duties is disputed. Specifically, there are material disputes as to whether plaintiff improperly utilized Prasad Cosmetic credit cards for personal purchases, misused a vendor promotion, and the extent of plaintiff's engagement in a romantic relationship with a subordinate. Therefore, the cross motions for summary judgment on defendants' counterclaim for breach of fiduciary duty pursuant to the faithless servant doctrine are denied.

### i.    Prasad Cosmetic Credit Cards

Defendants assert that plaintiff improperly utilized company credit cards for Staples, Walmart, and Best Buy, resulting in "over $115,000 in improper charges." Defs. Opp'n 22–23. To support this assertion, defendants point to credit card statements indicating charges for a range of goods, including gift cards, clothing, electronics, and food. S. Prasad Decl. ¶¶ 35–65, ECF No. 71-3.

Plaintiff testified that she was allowed to make gift card purchases "as an incentive" for "[d]oing a good job," that she was allowed to make personal purchases with company cards, and that she deducted her personal purchases from her wages. Pl. Dep. Tr. 86:17–20, 87:3, 163:18–20, ECF No. 71-8. Plaintiff argues that defendants reviewed the credit card statements and paid them contemporaneously, thereby ratifying any purchases that were not pre-approved. Pl. Mot. 23–24. Plaintiff also argues that, when initially questioned, Amiya Prasad was unable to determine which purchases were improper before he ultimately tried to "rewrite testimony." Oral Arg. Tr. 23:25–24:2, 17–19. Defendants counter that plaintiff's claim of gift card purchases being permitted as an incentive is made "in a vacuum" and lacks evidence other than plaintiff's own testimony. Oral Arg. Tr. 14:1. Defendants assert that plaintiff was not authorized to use the company

card for personal purposes, and argue that weighing contemporaneous payment in favor of plaintiff undermines the concept of fiduciary duties. *See* Defs. 56.1 ¶ 34, Oral Arg. Tr. 33:8–13. Defendants further assert that they appropriately used the errata sheet for corrections to Amiya Prasad's deposition testimony. Oral Arg. Tr. 34:15–16.

Clearly, the parties dispute the relevant facts surrounding plaintiff's alleged misconduct: whether the purchases were for business purposes, whether non-business purchases were approved, and whether plaintiff paid for the non-business purchases she made. Both parties give testimony consistent with their claims. The evidence must thus be weighed by a factfinder and is unsuitable for summary judgment.

### ii.    Relationship with Subordinate

The next category of misconduct defendants allege in support of their breach of fiduciary duty claim arises from plaintiff's romantic relationship with her co-worker and subordinate, Gerson Vargas. Defs. Opp'n 25. In particular, defendants allege that plaintiff: allowed Vargas to enter the Prasad Cosmetic Garden City office before he was hired and engaged in sexual activity with him; facilitated the hiring of Vargas without advising defendants of a pre-existing romantic relationship; frequently engaged in sexual and recreational activity with Vargas after-hours at the Prasad Cosmetic office after he was hired; forged Amiya Prasad's signature to allow Vargas to participate in the company's healthcare plan; purchased sneakers for Vargas with a Prasad Cosmetic credit card; gave Vargas a travel reimbursement to which he was not entitled; and gave him gift cards from the Evolus vendor promotion. Defs. Opp'n 25–27.

Plaintiff admits some, but not all, of defendants' allegations. For example, plaintiff does not deny a romantic relationship with Vargas, but claims that it began after Vargas was hired by defendants. Pl. Opp'n 72; *see also* Vargas Dep. Tr. 21:14–15, ECF No. 67-7

(Vargas testifying that he "didn't know [plaintiff] before the job"). Plaintiff also testified that she added Vargas to the company insurance policy at defendants' request, and Vargas testified that the travel reimbursement was both part of his agreed upon compensation with defendants and not facilitated by plaintiff. Pl. Dep. Tr. 331:21–332:21, ECF No. 71-8; Vargas Dep. Tr. 37:20–38:9, ECF No. 67-7. Vargas also denied that plaintiff gifted him the sneakers or Evolus gift cards at issue. Vargas Dep. Tr. 37:3–9, 45:8–19, ECF No. 67-7. Further, the sneakers purchased on the company credit card appear to have been sent to the Prasad Cosmetic office but it is not clear who made the purchase, even though the email confirmation was sent to plaintiff. Defs. Mot. Ex. O, ECF No. 71-19 (email confirmation for sneakers sent to plaintiff's email).

The evidence offered by plaintiff raises several factual disputes concerning her relationship with Vargas. Additionally, the disputes regarding whether travel reimbursements and company insurance coverage were approved by defendants cannot be resolved by a review of the documentary evidence. Plaintiff testified that she was empowered to add Vargas to the insurance by Amiya Prasad, which Prasad denied. Vargas also testified that plaintiff was not involved in the travel reimbursement issue, which he claims was between himself and defendants. Defendants deny this as well. Resolution of these disputes between witnesses with competing testimony requires a credibility determination, an exercise which is inappropriate at summary judgement.

iii.    Evolus Vendor Promotion

To support their breach of fiduciary duty claim, defendants also assert that plaintiff engaged in a vendor promotion that was intended for Prasad Cosmetic for her personal

gain, obtaining "$39,600 in digital Visa cards." Defs. Opp'n 24, Defs. Mot. 8–12.[6] Defendants present documentary evidence to support their argument that plaintiff improperly redeemed the Visa gift cards. First, records obtained from the vendor, Evolus, indicate that there were 468 codes issued to Prasad Cosmetic and subsequently redeemed for the same number of Visa cards. Defs. 56.1 ¶¶ 146–48. The Evolus records include details about the redeemed codes, including associated emails, phone numbers, and phone service carriers. Defs. 56.1 ¶ 148. The acquired spreadsheet listed plaintiff's cell phone number, an unknown number, and the number for Heather Masotto, the Evolus Representative assigned to Prasad Cosmetic. *See* Defs. 56.1 ¶¶ 155–58. Second, the "vast majority" of the codes had a carrier associated with the Burner application, an application individuals use to obtain and use temporary phone numbers. *See* Defs. 56.1 ¶¶ 153, 160, 166. Defendants argue that plaintiff downloaded the Burner application and generated numbers "basically to the same extent" the vendor promotion gift card codes were redeemed. Oral Arg. Tr. 15:21–23. Next, defendants argue that screenshots of gift cards were found at plaintiff's email address, and that in those screenshots the word "Burner" can be found at the upper-left hand corner, which indicates that the Burner application

---

[6]    Plaintiff argues that because defendants' counterclaim does not include allegations regarding the Evolus promotion, the allegations should be disregarded. Pl. Mot. 24. However, "the Court has discretion to adjudicate a claim that was not pled." *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442, 456 (S.D.N.Y. 2010). Courts generally decline to consider unpled claims at summary judgment when the failure to plead resulted in a lack of notice to the other party and therefore foreclosed the opportunity to conduct discovery and prepare a defense. *Richards v. Connecticut Dep't of Corr.*, 349 F. Supp. 2d 278, 291 (D. Conn. 2004) ("The failure to properly plead . . . has deprived defendants of the notice necessary to permit them to conduct discovery and prepare a defense."). Here, the parties engaged in discovery concerning the Evolus promotion. *See* A. Prasad Dep. Tr. 115:8–119:22 (plaintiff's counsel questioning defendant Amiya Prasad about the Evolus promotion). *See also Jund v. Town of Hempstead*, 941 F.2d 1271, 1287 (2d Cir. 1991). Accordingly, the Court will consider defendants' allegations concerning the Evolus promotion.

was being used on plaintiff's phone. Oral Arg. Tr. 16:1–4; Defs. 56.1 ¶ 213; Defs. Mot. Ex. W, ECF No. 71-27 (screenshots found in plaintiff's email). Lastly, defendants offer subpoena records from the issuing bank, which show the gift cards were used by Vargas. Oral Arg. Tr. 30:20–31:1; Defs. Opp'n 25. Defendants' submissions also suggest that plaintiff was engaged in selling the Visa gift cards at issue. Defendants allege that certain individuals used some Visa gift cards who are unknown to either party, in particular Luis Dono, who defendants believe is "likely affiliated with Plaintiff or Vargas." S. Decl. ¶¶ 174–97.

Defendants have offered evidence tending to show that plaintiff improperly redeemed Visa gift cards intended for Prasad Cosmetic's patients. However, when considering defendants' motion for summary judgment, the Court is obligated to view the evidence in the light most favorable to plaintiff and resolve all factual inferences in her favor. When considering the evidence according to this standard, the record before the Court is insufficient to determine at summary judgment whether and to what extent plaintiff improperly redeemed the gift cards. At her deposition, plaintiff denied using or selling any gift cards or Visa cards associated with the Evolus promotion, and she testified that Amiya Prasad was aware of the gift card promotion and did not want Prasad Cosmetic to participate. Pl. Dep. Tr. 250:22–251:6, 254:16–17, 285:18–21. Additionally, an Evolus Representative testified that she downloaded the Burner application on plaintiff's phone "at the behest of Evolus" only to instruct plaintiff on how to redeem the gift cards. Oral Arg. Tr. 25: 3–9; Pl. 56.1 ¶ 95. Furthermore, plaintiff denies that she sold any Visa gift cards to third parties and defendants do not offer direct evidence showing either that plaintiff sold gift cards or that she is connected to an individual named Luis Dono. Pl. Dep. Tr. 272:24–273:5, ECF No. 71-8; A. Prasad Dep. Tr. 119:14–22 (Amiya Prasad

testifying that he has no direct evidence that Visa gift cards were sold "to anyone else").

Accordingly, whether plaintiff engaged in misconduct regarding the Evolus promotion remains in dispute.

*       *       *

Next, the Court will consider whether the evidence of misconduct presented by defendants has established that plaintiff's disloyalty permated her service such that defendants are entitled to forfeiture of her compensation during the period of alleged disloyalty. In particular, the Court will consider whether "(1) . . . the employee's disloyal activity was related to the performance of her duties," and whether "(2) . . . the disloyalty permeated the employee's service in its most material and substantial part." *Roytlender*, 2024 WL 3566998, at *12.

> iv.    The undisputed facts of plaintiff's misconduct do not warrant summary judgment for either party.

The misconduct for which there is no genuine dispute, including plaintiff's use of the office for sexual and recreational activity after Vargas was hired, is not sufficient to entitle defendants to summary judgment on their breach of fiduciary duty counterclaim. Specifically, defendants have failed to demonstrate as a matter of law that the alleged disloyal conduct materially and substantially permeated plaintiff's service to defendants.

For example, in *Roytlender*, defendants established that the plaintiff's disloyal conduct permeated her service to defendants such that defendants were entitled to forfeiture where plaintiff engaged in multiple schemes for approximately four years to steal over $1 million. 2024 WL 3566998, at *12. Isolated instances of misconduct, however, are insufficient to warrant application of the faithless servant doctrine. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 466, 470 (S.D.N.Y. 2008)

25

(finding that isolated and relatively routine misconduct did not warrant application of the faithless servant doctrine).

Indeed, courts have found that forfeiture is warranted where misconduct "tainted all of the work during the period of disloyalty." *Spencer-Smith v. Ehrlich*, No. 23-cv-02652, 2024 WL 709291, at *17 (S.D.N.Y. Feb. 21, 2024) (finding plaintiff sufficiently alleged breach of fiduciary duty where defendant attorney allegedly engaged in inappropriate conduct and jeopardized his client's music tour). *See also Doe v. Solera Capital LLC*, No. 18-cv-01769, 2019 WL 1437520, at *9 (S.D.N.Y. Mar. 31, 2019), *vacated on other grounds*, 2020 WL 11027792 (S.D.N.Y. Dec. 16, 2020) (finding courts apply the faithless servant doctrine more frequently when disloyalty is part of a persistent pattern). As another example, in *Phansalkar v. Andersen Weinroth & Co., L.P.*, the Second Circuit found that the employee plaintiff's misconduct warranted forfeiture because his disloyalty occurred in "nearly every transaction on which he worked," and concluded that where "disloyalty occurs in four out [of] five of an employee's primary areas of responsbility," the disloyalty constitutes a substantial violation of the terms of that employee's service. 344 F.3d 184, 202 (2d Cir. 2003).

Here, the undisputed facts of plaintiff's relationship with Vargas show a consensual romantic relationship. Defendants' allegations that plaintiff gave Vargas travel reimbursement and improperly put him on the company health insurance have not been established when viewing the evidence in plaintiff's favor, and considering only the undisputed and improper use of company property, this misconduct did not permeate plaintiff's service for Prasad Cosmetic. While defendants provide evidence that plaintiff and Vargas improperly utilized the Prasad Cosmetic office during work hours, *see* S. Prasad Decl. ¶¶ 97–98, defendants allege that the bulk of plaintiff's misuse of the office

26

space occurred after work hours, *see* Defs. Mot. Ex. M, ECF No. 71-17 (spreadsheet of time and dates of plaintiff and Vargas's misuse of the office space).

Accordingly, defendants do not present any evidence that plaintiff's relationship with Vargas affected her day-to-day job performance at Prasad or that this misconduct permeated her employment. Because the facts about which there is no genuine dispute do not show that plaintiff's misconduct permeated her service at Prasad, defendants have not established that they are entitled to forfeitfure of plaintiff's compensation at this stage in the proceedings.

Additionally, plaintiff's motion for summary judgment on defendants' counterclaim for breach of fiduciary duty is denied. Plaintiff argues that defendants have put forward insufficient evidence to establish that plaintiff misused credit cards or redeemed the Evolus gift cards, and that defendants' allegations regarding plaintiff's relationship with Vargas are insufficient to entitle them to forfeiture of plaintiff's compensation. Pl. Mot. 21–25. As discussed *supra*, defendants have submitted sufficient documentary evidence to enable a jury to find that plaintiff engaged in misconduct during her employment at Prasad. Resolution of the disputed facts regarding the particulars of plaintiff's relationship with Vargas, whether plaintiff misused company credit cards, plaintiff's alleged misconduct regarding the Evolus gift card promotion, and whether that alleged misconduct permeated plaintiff's service, are left for resolution at trial.

### III.   Plaintiff is not entitled to summary judgment on defendants' affirmative defenses.

Lastly, plaintiff argues that the Court should strike defendants' affirmative defenses of good faith, waiver, ratification, and lack of willfulness. Pl. Mot. 16–21. However, a ruling on these affirmative defenses is premature at this juncture.

"At the summary judgment stage, courts are generally reluctant to rule on a party's good-faith defense where an FLSA violation has yet to be established." *Ametepe v. Peak Time Parking, Corp.*, No. 18-cv-05384, 2021 WL 1172669, at *9 (S.D.N.Y. Mar. 29, 2021) (finding it premature to resolve good faith affirmative defense pending a finding of liability). The same is true regarding defendants' affirmative defense of a lack of willfulness. "[C]ourts in [the Second] Circuit have generally left the question of willfulness to the trier of fact." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015). Although plaintiff correctly notes that defendants bear the burden of proof on these defenses at trial, *see* Pl. Mot. 17, plaintiff requests that the Court resolve the question on summary judgment, where plaintiff bears the burden of proof. Accordingly, "notwithstanding [d]efendants' difficult trial burden, they have no burden to meet right now." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-cv-03956, 2011 WL 317971, at *10 (E.D.N.Y. Jan. 28, 2011) (declining to award FLSA plaintiff summary judgment on good faith defense). Considering that plaintiff is not entitled to summary judgment on her underlying unpaid overtime claim, the Court declines to rule on defendants' affirmative defenses of lack of willfulness and good faith.

Even if plaintiff had established a violation of the FLSA on summary judgment, she has not met her burden to show an absence of evidence supporting the affirmative defenses of lack of willfulness and good faith. To support her argument that defendants failed to provide evidence of their efforts to comply with the FLSA, plaintiff cites paragraphs 70 through 74 of her statement of undisputed facts. Pl. Mot. 19. However, those paragraphs merely state that defendants produced no timesheets, tax statements, wage statements, or records of plaintiff's hours worked, and that payday reminder emails sent by plaintiff to defendant Amiya Prasad "did not list what hours she worked or her

28

rate of pay." Pl. 56.1 ¶¶ 70–74. Defendants' lack of records—which in part contributed to the factual dispute necessitating a trial as to plaintiff's overtime claim—is not adequate to invalidate defendants' affirmative defenses at this stage.

Additionally, plaintiff's reliance on *Rosso v. PI Management Associates, LLC* is inapposite. Pl. Mot. 19 (citing *Rosso*, No. 02-cv-01702, 2005 WL 3535060 (S.D.N.Y. Dec. 23, 2005)). The court in *Rosso* made its finding on the affirmative defense of good faith after finding at a bench trial that plaintiff had established a violation of the FLSA. *See Rosso*, 2005 WL 3535060 at *8. As discussed *supra*, plaintiff has not established a FLSA violation at summary judgment. Accordingly, plaintiff is not entitled to summary judgment on defendants' second, third, fourth, and eleventh affirmative defenses.

Plaintiff also requests that the Court strike defendants' sixth affirmative defense of waiver and ratification. In support of this argument, but with no citation to her testimony, plaintiff states that she "testified that she asked [Amiya Prasad] to pay her on the books and he refused." Pl. Mot. 20. However, whether plaintiff requested on-the-books pay is disputed by the parties. *See* Defs. Counter 56.1 ¶ 30; Pl. Dep. Tr. 51:13–25, ECF No. 71-8 (plaintiff testifying that she did not know why defendants were paying her in cash off the books); A. Prasad Dep. Tr. 47:22–48:20, ECF No. 72-4 (Amiya Prasad testifying that plaintiff was not put back into the payroll system at her own request due to her financial situation). Plaintiff's motion does not present argument as to why defendants' affirmative defense of ratification should be stricken, and defendants' brief in opposition does not address plaintiff's argument regarding waiver. *See* Pl. Mot. 16–21 (containing no argument regarding the affirmative defense of ratification); Defs. Opp'n 16–17. Considering the relative lack of argument on this issue, and the dispute concerning the circumstances which led to plaintiff being paid off the books, the Court will not strike

defendants' affirmative defense of waiver and ratification at this juncture. Accordingly, plaintiff's motion for summary judgement as to defendants' sixth affirmative defense is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is **DENIED** and defendants' motion for summary judgment is **GRANTED** in part, **DENIED** in part. In accordance with the Court's Individual Practice Rule IV.A, the parties shall file a proposed joint pretrial order by March 17, 2025.


**SO ORDERED.**

              ___*/s/ Natasha C. Merle*___
              NATASHA C. MERLE
              United States District Judge


Dated:      February 13, 2025
             Brooklyn, New York